**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BAPU CORP., HARSHAD S. PATEL,** | **MASTER FILE: 07-CV-5938 (WJM)** |
| **Plaintiffs,** | |
| **v.** | |
| **CHOICE HOTELS INTERNATIONAL, INC.,** | **OPINION** |
| **Defendant.** | **HON. WILLIAM J. MARTINI** |

Michael R. Curran
E-4 Greenbriar Court
Clifton, NJ 07012

(*Counsel for Plaintiffs*)

John P. Mueller
Ballard, Spahr, Andrews & Ingersoll, LLP
Plaza 1000
Main Street
Suite 500
Voorhees, NJ 08043

(*Counsel for Defendant*)

**WILLIAM J. MARTINI, U.S.D.J.:**

This suit stems from an arbitration award.  Defendant moves to dismiss Plaintiffs'

complaint on the grounds that Plaintiffs' claims were resolved in the arbitration.

Defendant also moves to confirm the arbitration award.  Plaintiffs move to vacate the

award on several grounds—including that the statute of limitations for commencing

arbitration expired before Defendant filed its arbitration demand.  The Court agrees with

Plaintiffs' statute of limitations argument.  Accordingly, Plaintiffs' motion to vacate the arbitration award is **GRANTED**, and Defendant's motion to dismiss and motion to confirm the arbitration award are **DENIED**.

## I.    FACTS AND PROCEDURE

This suit concerns whether a contract claims was subject to arbitration.  Plaintiffs in this case breached a contract with Defendant.  Defendant initiated arbitration pursuant to the contract and secured an award.  The parties now dispute the arbitration's validity.

### A.    The Contract

In 2000, the two Plaintiffs, Bapu Corporation and Bapu President Harshad Patel, entered into a franchise contract with Defendant, Choice Hotels International, Inc.  (First Am. Compl. ¶¶ 1, 6, 7; Aff. of Harshad Patel ¶ 1; Decl. of John Mueller Ex. B.)  The contract provided Plaintiffs the right to operate a building that Plaintiffs were then leasing as a Quality Inn hotel.  (Patel Aff. ¶ 4; Mueller Decl. Ex. B.)

Under the contract, Plaintiffs had to renovate the building before they could operate it as a Quality Inn.  (Mueller Decl. Ex. B Addendum No. 1.)  The contract required Plaintiffs to complete this renovation by November 30, 2000.[1]  However, the contract also provided that in the event Plaintiffs could not meet this renovation deadline,

---

[1]The contract stated that "[y]ou agree to make the following changes and additions to upgrade the Hotel to meet our standards or to cure existing deficiencies <u>before</u> entering the QUALITY INN System, **but in no event later than November 30, 2000**."  (Mueller Decl. Ex. B Addendum No. 1.)

they could request and Defendants could grant one or more three-month extensions if Plaintiffs paid an "extension fee" of $5,000 for each extension.[2]

The contract also contained two relevant provisions regulating disputes between the parties.  First, the contract contained an arbitration clause requiring arbitration of "any controversy or claim arising out of or relating to this Agreement." (Mueller Decl. Ex. B ¶ 22.)  Second, the contract stated that "[n]either party may file a claim . . . arising out of or relating to this Agreement after 3 years from the date that the claim arose, unless applicable law states a shorter statute of limitations."  (Mueller Decl. Ex. B ¶ 20(k).)

**B.    The Breach**

As of the deadline for renovations on November 30, 2000, Plaintiffs had not completed the required renovations.  (Mueller Decl. Ex. C.)  Defendant then sought to unilaterally extend the deadline.  On May 8, 2001, Defendant sent Plaintiffs a letter purporting to extend the time for Plaintiffs to begin the renovations until September 28, 2001.  (Mueller Decl. Ex. C.)  Plaintiffs deny having ever received this letter and sent no

---

[2]The contract stated as follows:

> If you do not cause the Construction Start to occur within 8 months of the date of this Agreement, you may request, before the end of the 8 months, an additional 3 months for Construction Start.  We are not obligated to extend the time for Construction Start.  If we agree to extend the time for Construction Start, you will pay us an extension fee of $5,000 for each 3-month extension."  (Mueller Decl. Ex. B ¶ 23(c)(3).)

3

response.[3]  (Patel Aff. ¶ 20(d)(iii).)  Having not received a response, Defendant on October 16, 2001, sent Plaintiffs another letter offering to extend the renovation deadline for another three months, until January 16, 2002, if Plaintiffs agreed to pay a $5,000 extension fee.  (Mueller Decl. Ex. C.)  Plaintiffs declined this offer. (Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss 4.)

Defendant accordingly began the process of terminating the contract.  On January 10, 2002, Defendant sent Plaintiffs a letter titled "Notice of Default."  (Mueller Decl. Ex. D.)  In the letter, Defendant demanded that Plaintiffs complete their promised renovations within thirty days of the letter's date and threatened to terminate the contract if Plaintiffs failed to do so.  (Mueller Decl. Ex. D.)  Plaintiffs deny having received this letter.  (Patel Aff. ¶ 20(d)(iv).)

Although Defendant received no response to this letter, Defendant apparently failed to take any further action until 2004.  On January 15, 2004, and again on September 10, 2004, Defendant sent Plaintiffs letters titled "Notice of Default."  (Mueller Decl. Exs. E, F.)  These letters were similar to Defendant's previous letter and threatened termination of the contract if Plaintiffs failed to renovate within thirty days.  (Mueller

---

[3]Plaintiffs suggest that Defendant fabricated this and other letters: "The May 8, 2001 letter (#2) was probably created by Defendant for the arbitration in order to try to extend the time allotted to CHOICE to sue by an extra year."  (Patel Aff. ¶ 20(d)(iii).)  The Court reminds Plaintiffs that this is quite a serious accusation and strongly cautions Plaintiffs—and Plaintiffs' attorney—against mounting such attacks without evidentiary support.

Decl. Exs. E, F.)  Again, Plaintiffs deny having received these letters.  (Patel Aff. ¶ 20(d)(iv).)

Finally on September 15, 2004, Defendant sent Plaintiffs a letter titled "Notice of Termination."  (Mueller Decl. Ex. G.)  In the letter, Defendants purported to terminate the contract and claimed to be entitled to damages.  (Mueller Decl. Ex. G.)  Once again, Plaintiffs deny having received this letter.  (Patel Aff. ¶ 20(d)(iv).)

### C.      The Arbitration

On October 19, 2006—six years after Plaintiffs failed to meet the renovation deadline and two years after Defendant sent Plaintiffs the "Notice of Termination"—Defendant served Plaintiffs with a demand for arbitration.  (Mueller Decl. Ex. H.)  The demand for arbitration sought "recovery of damages . . . sustained due to a breach by Respondents of a franchise agreement that required Respondents to complete changes and additions to upgrade the hotel."  (Mueller Decl. Ex. H.)

Plaintiffs objected to the arbitration on several grounds, including on the grounds that the arbitration was barred by the applicable statute of limitations.  On April 23, 2007, Plaintiffs filed a letter with the arbitrator stating that they would suffer prejudice by participating in the arbitration.  (Mueller Decl. Ex. Q.)  Plaintiffs argued, inter alia, "Choice could succeed in committing a deception upon the AAA, having used these proceedings to avoid dismissal as to personal jurisdiction and the limitations period."  (Mueller Decl. Ex. Q.)  On June 10, 2007, Plaintiffs filed another letter with the arbitrator

stating that "the alleged contract automatically terminated within six months of signing so that there is a statute of limitations bar to this matter."  (Mueller Decl. Ex. S.)

In a prehearing opinion, the arbitrator acknowledged Plaintiffs' statute of limitations argument but refused to address it before the hearing.  The arbitrator stated as follows:

> This dispute is heavily fact based on one that cannot be disposed of by way of a preliminary motion at this time.  The issues of statute of limitations and laches are pertinent issues, but they will have to wait for another day.  I cannot "judge" or "decide" this case on the papers presented.  (Ex. W at 29.)

Ultimately, the arbitrator ruled for Defendant.  The arbitrator found Plaintiffs in breach of the contract and awarded Defendant $142,560 as damages pursuant to a liquidated damages clause in the contract.  (Cross-Pet. to Confirm Arbitration Award Ex. A 11.)  The arbitrator did not address Plaintiffs' statute of limitations argument.

**D.    This Suit**

Plaintiffs believing that the arbitrator lacked jurisdiction over this dispute, they filed this suit.  In the complaint, Plaintiffs generally requested relief from both the arbitration award and contract.  (Compl. ¶¶ 24–32.)  Plaintiffs also appear to allege that Defendant breached the contract, and Plaintiffs seek resulting damages.[4]

The parties then filed the instant motions, which essentially hinge upon whether

---

[4]In the complaint's prayer for relief, Plaintiffs request "a judgment for $2,000,000.00 in lost franchise revenue due to the wrongful conduct of Defendant in violation of the New Jersey covenant of good faith and fair dealing."  (Compl.)

the arbitrator had jurisdiction over this dispute.  Plaintiffs file a motion to vacate the

arbitration award.  Plaintiffs argue, inter alia, that the arbitrator lacked jurisdiction over

this dispute because the three-year period provided by the contract in which to file claims

expired before Defendant filed its demand for arbitration.[5]  (Pls.' Mem. of Law in Opp'n

to Def.'s Mot to Dismiss 24–25.)  In response, Defendant has filed a motion to dismiss

Plaintiffs' claims as being completely resolved by the arbitration and a motion to confirm

the arbitration award.

## II.    DISCUSSION

Arbitration is at essence a matter of contract.  United Steelworkers of Am., AFL-

CIO-CLC v. Rohm & Haas Co., 522 F.3d 324, 331 (3d Cir. 2008).  Parties are bound to

arbitrate—rather than litigate—their disputes only to the extent that they have

contractually agreed to do so.  See Gay v. CreditInform, 511 F.3d 369, 386 (3d Cir.

2007).  The question of whether the parties have contractually submitted a dispute to

arbitration—the question of arbitrability—is generally an issue for judicial determination

by a district court.  Id. at 387.

As discussed above, the motions hinge upon the arbitrator's jurisdiction over this

dispute.  If the arbitrator possessed jurisdiction over this dispute, Plaintiffs face a

formidable challenge if they wish to upset the arbitration award, and Defendant is likely

---

[5]Plaintiffs offer an array of arguments in favor of vacating the arbitration award. However, because the statute of limitations argument completely disposes of all pending motions, the Court will address only that issue.

entitled to dismissal of Plaintiffs' complaint.  See United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995) (holding that courts have very little authority to disturb arbitration awards).  Also, in this instance the Court would likely grant Defendant's motion to confirm the arbitration award.  See 9 U.S.C. § 9 (allowing a court to confirm and enter judgment on an arbitration award).  If, however, the arbitrator lacked jurisdiction to resolve this dispute, the Court would likely grant Plaintiffs' motion to vacate the award.  See 9 U.S.C. § 10(a)(4) (stating that a district court has the authority to vacate an arbitration award "where the arbitrators exceeded their powers").  In the latter case, Plaintiffs' complaint might proceed as it would not have been resolved by any valid arbitration.

Plaintiffs argument is that the arbitrator lacked jurisdiction over this dispute because Defendants failed to initiate arbitration within the time allowed for arbitration provided in the contract.  (Pls.' Mem. 24–25.)  Plaintiffs note that the contract allowed Defendant to arbitrate a claim for breach only within three years of that breach.  (Pls.' Mem. 14, 24.)  Plaintiffs reason that Defendant failed to meet this requirement because Plaintiffs initially breached the contract by failing to meet the November 30, 2000, deadline for renovation while Defendant did not file a demand for arbitration until October 19, 2006.  (Pls.' Mem. 24.)  The Court agrees.

A corollary of the contractual nature of arbitration is that parties may contractually agree on the time limits in which to commence arbitration.  See Cogswell v. Merrill

Lynch, Pierce, Fenner & Smith Inc., 78 F.3d 474 (10th Cir. 1996).  Such time limits act as substantive limitations on the arbitrator's jurisdiction, that is, courts will find that parties intended to preclude arbitration of claims not filed within the time period.  See Nat'l Iranian Oil Co. v. Mapco Int'l, Inc., 983 F.2d 485, 492 (3d Cir. 1992) ("[I]f an agreement provides that no dispute is eligible for arbitration after a specific time period, and if the plaintiff demands arbitration after expiration of that period, the district court must dismiss the petition to compel arbitration as time-barred because the time period is a substantive limitation on the arbitration agreement.").  Like any other substantive limitation on the arbitrator's jurisdiction, whether a party has arbitrated a claim within the contract's substantive time limits is a question for the district court, not the arbitrator.  Id. at 491 n.4 ("If . . . the arbitration clause provides a substantive timeliness limitation on claims to be submitted to arbitration . . . the timeliness of the demand for arbitration or of the underlying claim is a question for the district court because it concerns what claims the parties have contractually agreed to submit to arbitration.").

Here, the parties have clearly agreed to such a time limit.  The contract provides as follows:  "Neither party may file a claim . . . arising out of or relating to this Agreement after 3 years from the date that the claim arose, unless applicable law states a shorter statute of limitations." (Mueller Decl. Ex. B ¶ 20(k).)  Thus the questions are when Defendant's breach of contract claim arose and whether Defendant submitted this claim to arbitration within three years of that date.

The court need not determine precisely when Defendant's breach of contract claim arose because it was clearly more than three years before Defendant filed its demand for arbitration.  A cause of action for breach of contract arises when the contract is breached and when the breach was or should have been discovered.  Jones v. Hyatt Ins. Agency, Inc., 741 A.2d 1099, 1104 (Md. 1999).  While a party's mere failure to perform within a contract's time deadline is not necessarily a material breach, the breach becomes material if that party fails to perform within a reasonable time.  23 Richard A. Lord, Williston on Contracts § 63:18 (4th ed. 1990); see Clarke v. Lacy, 132 A.2d 478, 483 (Md. 1957) ("[G]enerally, where time is found not to be of the essence, the party in default has it within his power to fulfil, within a definite period, the obligation he should have fulfilled earlier . . . .").  Here, Defendant did not file a demand for arbitration until October 19, 2006.  Given the contract's time limitation provision, claims filed on such a date must have arisen within the prior three years, or after October 19, 2003.  Yet Defendant's claim initially arose on November 30, 2000, when Plaintiff failed to meet the contract's deadline for renovation.  Even giving Plaintiff a reasonable amount of time to perform before the failure could be considered a material breach, see Clarke, 132 A.2d at 483, Defendant's claim for material breach arose significantly more than three years before Defendant filed for arbitration.  Accordingly, the arbitrator lacked jurisdiction over Defendant's claim for breach.

Defendant puts forth three arguments to rebut the foregoing analysis and

conclusion.[6]  The Court finds these three arguments unpersuasive.

First, Defendant argues that Plaintiffs failed to raise the issue of the three-year time limitation in the arbitration and thus may not do so now.  (Opp'n 22.)  But as discussed above, Plaintiffs indeed did raise this issue before the arbitrator.  For example, on June 10, 2007, Plaintiffs filed a prehearing letter with the arbitrator stating that "the alleged contract automatically terminated within six months of signing so that there is a statute of limitations bar to this matter."  (Mueller Decl. Ex. S.)  Indeed, the arbitrator acknowledged Plaintiffs' statute of limitations argument:

> This dispute is heavily fact based on one that cannot be disposed of by way of a preliminary motion at this time.  The issues of statute of limitations and laches are pertinent issues, but they will have to wait for another day.  I cannot "judge" or "decide" this case on the papers presented.  (Ex. W at 29.)

Thus the Court cannot find Plaintiffs to have waived this argument.

Second, Defendant argues that Plaintiffs were not in breach of the contract until Defendant mailed Plaintiffs a notice of termination.  (Opp'n 23.)  But as explained above, Plaintiffs were in breach of the contract as of their failure to meet the November 30,

_____

[6]Defendant does not appear to argue that it properly extended Plaintiffs' time to renovate under the contract's provision allowing for three month extensions of this deadline.  (Mueller Decl. Ex. B ¶ 23(c)(3).)  Furthermore, such an argument would be futile.  This provision allowed Defendant to extend the renovation deadline for three-month periods upon Plaintiffs' request if Plaintiffs paid a $5,000 fee for each three-month extension.  (Mueller Decl. Ex. B ¶ 23(c)(3).)  While Defendant did offer one extension in the renovation deadline to Plaintiffs (Mueller Decl. Ex. C), it appears from the record that Plaintiffs neither requested this extension nor paid a $5,000 fee for it.  Accordingly, Defendant's extension was not pursuant to the contract's extension provision.

2000, renovation deadline, and Plaintiffs were in material breach of the contract within a reasonable time after that.  The date on which Plaintiffs breached the contract is different from and precedes the date on which Defendant terminated the contract in response to that breach.

Third, Defendant argues that Plaintiffs should be equitably estopped from relying on the statute of limitations.  (Opp'n 23.)  Where a wrongful party intentionally induces the injured party to delay filing a claim, the wrongful party may be equitably estopped from then asserting certain statute of limitations defenses against that claim.  See Knill v. Knill, 510 A.2d 546, 550 (Md. 1986).  Defendant argues that they granted Plaintiffs extended time to renovate and delayed filing for arbitration "with the good faith belief that Petitioners would comply with the Franchise Agreement."  (Opp'n 24.)  But any such good faith belief appears unfounded and not justified by any facts in the record.  Certainly by the time Defendant sent its first notice of default, on January 10, 2002, Defendant can not claim to have reasonably believed that Plaintiffs would fulfil their obligations.  Yet even this date is significantly more than three years prior to Defendant's demand for arbitration, on October 19, 2006.  Plaintiffs are thus not equitably estopped from relying on the three-year deadline for filing claims.

In summary, Defendant appears to have simply sat on its rights too long.  The record indicates that Plaintiffs were in material breach shortly after the November 30, 2000, deadline for renovation.  Yet Defendant waited until October 19, 2006, to file a

demand for arbitration, well beyond the three-year time period in which to arbitrate

breach of contract claims.  The record fails to provide any justification for this delay.

Accordingly, the arbitrator lacked jurisdiction over this dispute, and the Court must

vacate its award.

**III.     CONCLUSION**

The arbitrator lacked jurisdiction to issue an award in this case.  Its award is thus

**VACATED**.  Accordingly, Plaintiffs' motion to vacate is **GRANTED**, and Defendant's

motions to dismiss and to confirm are **DENIED**.  An Order accompanies this Opinion.

s/ William J. Martini
William J. Martini, U.S.D.J.

13