## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BAPU CORP., HARSHAD S. PATEL,** | **MASTER FILE: 07-CV-5938** |
| | **(WJM)** |
| **Plaintiffs,** | |
| | |
| **v.** | |
| | **OPINION** |
| **CHOICE HOTELS INTERNATIONAL, INC.,** | |
| | **HON. WILLIAM J. MARTINI** |
| **Defendant.** | |

Michael R. Curran
E-4 Greenbriar Court
Clifton, NJ 07012

(*Counsel for Plaintiffs*)

John P. Mueller
Ballard, Spahr, Andrews & Ingersoll, LLP
Plaza 1000
Main Street
Suite 500
Voorhees, NJ 08043

(*Counsel for Defendant*)


**WILLIAM J. MARTINI, U.S.D.J.:**

Defendant files a motion to reconsider this Court's order granting Plaintiffs'

motion to vacate an arbitration award, denying Defendant's motion to confirm the award,

and denying Defendant's motion to dismiss Plaintiffs' complaint.  The Court's reasoning

behind this order was that Defendant failed to initiate the arbitration within the applicable

statute of limitations.  Defendant now argues the Court overlooked that this statute of

limitations evaluation was a question for the arbitrator, not the Court.  The Court agrees.

The Court further finds that the arbitration award is valid, despite Plaintiffs' arguments to

the contrary, which the Court finds unpersuasive.  Accordingly, Defendant's motion to

reconsider, motion to confirm the arbitration award, and motion to dismiss Plaintiffs'

complaint are **GRANTED**, and Plaintiffs' motion to vacate the arbitration award is

**DENIED**.

## I.    FACTS AND PROCEDURE

This suit concerns the validity of an arbitration award in a contract dispute.

Plaintiffs in this case breached a contract with Defendant.  Defendant initiated arbitration

pursuant to the contract and secured an award.  The parties now dispute the arbitration's

validity.

### A.    The Contract

In 2000, the two Plaintiffs, Bapu Corporation and Bapu President Harshad Patel,

entered into a franchise contract with Defendant, Choice Hotels International, Inc.  (First

Am. Compl. ¶¶ 1, 6, 7; Aff. of Harshad Patel ¶ 1; Decl. of John Mueller Ex. B.)  The

contract provided Plaintiffs the right to operate a building that Plaintiffs were then leasing

as a Quality Inn hotel.  (Patel Aff. ¶ 4; Mueller Decl. Ex. B.)  Under the contract,

Plaintiffs had to renovate the building before they could operate it as a Quality Inn.

(Mueller Decl. Ex. B Addendum No. 1.)  The contract required Plaintiffs to complete this

renovation by November 30, 2000.[1]

The contract also contained two relevant provisions regulating disputes between the parties.  First, the contract contained an arbitration clause requiring arbitration of "any controversy or claim arising out of or relating to this Agreement." (Mueller Decl. Ex. B ¶ 22.)  Second, the contract stated that "[n]either party may file a claim . . . arising out of or relating to this Agreement after 3 years from the date that the claim arose, unless applicable law states a shorter statute of limitations."  (Mueller Decl. Ex. B ¶ 20(k).)

**B.     The Breach**

As of the deadline for renovations on November 30, 2000, Plaintiffs had not completed the required renovations.  (Mueller Decl. Ex. C.)  Defendant then sought to unilaterally extend the deadline.  On May 8, 2001, Defendant sent Plaintiffs a letter purporting to extend the time for Plaintiffs to begin the renovations until September 28, 2001.  (Mueller Decl. Ex. C.)  Plaintiffs deny having ever received this letter and sent no response.  (Patel Aff. ¶ 20(d)(iii).)  Having not received a response, Defendant on October 16, 2001, sent Plaintiffs another letter offering to extend the renovation deadline for another three months, until January 16, 2002, if Plaintiffs agreed to pay a $5,000 extension fee.  (Mueller Decl. Ex. C.)  Plaintiffs declined this offer. (Pls.' Mem. of Law

---

[1]The contract stated that "[y]ou agree to make the following changes and additions to upgrade the Hotel to meet our standards or to cure existing deficiencies <u>before</u> entering the QUALITY INN System, **but in no event later than November 30, 2000**." (Mueller Decl. Ex. B Addendum No. 1.)

in Opp'n to Def.'s Mot. to Dismiss 4.)

Defendant accordingly began the process of terminating the contract.  Between

2002 and 2004, Defendant sent Plaintiffs letters on three separate occasions titled "Notice

of Default."  (Mueller Decl. Exs. D, E, F.)  These letters demanded that Plaintiffs

complete their promised renovations and threatened termination of the contract if

Plaintiffs did not.  (Mueller Decl. Exs. D, E, F.)  Plaintiffs did not complete the promised

renovations.  Finally on September 15, 2004, Defendant sent Plaintiffs a letter titled

"Notice of Termination."  (Mueller Decl. Ex. G.)  In the letter, Defendants purported to

terminate the contract and claimed to be entitled to damages.  (Mueller Decl. Ex. G.)

### C.      The Arbitration

On October 19, 2006, Defendant served Plaintiffs with a demand for arbitration.

(Mueller Decl. Ex. H.)  The demand for arbitration sought "recovery of damages . . .

sustained due to a breach by Respondents of a franchise agreement that required

Respondents to complete changes and additions to upgrade the hotel."  (Mueller Decl. Ex.

H.)

Plaintiffs objected to the arbitration on several grounds, including on the grounds

that the arbitration was barred by the applicable statute of limitations.  On April 23, 2007,

Plaintiffs filed a letter with the arbitrator stating that they would suffer prejudice by

participating in the arbitration.  (Mueller Decl. Ex. Q.)  Plaintiffs argued, inter alia,

"Choice could succeed in committing a deception upon the AAA, having used these

4

proceedings to avoid dismissal as to personal jurisdiction and the limitations period."
(Mueller Decl. Ex. Q.)  On June 10, 2007, Plaintiffs filed another letter with the arbitrator
stating that "the alleged contract automatically terminated within six months of signing so
that there is a statute of limitations bar to this matter."  (Mueller Decl. Ex. S.)

In a prehearing opinion, the arbitrator acknowledged Plaintiffs' statute of
limitations argument but refused to address it before the hearing.  The arbitrator stated as
follows:

> This dispute is heavily fact based on one that cannot be
> disposed of by way of a preliminary motion at this time.  The
> issues of statute of limitations and laches are pertinent issues,
> but they will have to wait for another day.  I cannot "judge" or
> "decide" this case on the papers presented.  (Ex. W at 29.)

Ultimately, the arbitrator ruled for Defendant.  The arbitrator found Plaintiffs in
breach of the contract and awarded Defendant $142,560 as damages pursuant to a
liquidated damages clause in the contract.  (Cross-Pet. to Confirm Arbitration Award Ex.
A 11.)  The arbitrator did not address Plaintiffs' statute of limitations argument.

### D.     This Suit

Plaintiffs believing that the arbitrator lacked jurisdiction over this dispute, they
filed this suit.  In the complaint, Plaintiffs generally requested relief from both the
arbitration award and contract.  (Compl. ¶¶ 24–32.)  Plaintiffs also appear to allege that

Defendant breached the contract, and Plaintiffs seek resulting damages.[2]

The parties then filed the instant motions, which essentially hinge upon the validity of the arbitration award.  Plaintiffs filed a motion to vacate the arbitration award.  Most importantly, Plaintiff argued that the arbitrator lacked jurisdiction over this dispute because the three-year period provided by the contract in which to file claims had expired before Defendant filed its demand for arbitration.  (Pls.' Mem. of Law in Opp'n to Def.'s Mot to Dismiss 24–25.)  Plaintiffs also appeared to make six other arguments in favor of vacating the arbitration award: (1) that Defendant did not properly serve Plaintiffs with a demand for arbitration, (2) that the arbitrator was biased for Defendant, (3) that the arbitrator engaged in misconduct by failing to postpone the hearing upon Plaintiffs' request, (4) that the arbitrator exceeded his authority by interpreting the contract to contain a term it could not be reasonably said to have contained, (5) that the arbitrator misinterpreted a liquidated damages provision in the contract, and (6) that the arbitrator improperly relied on hearsay evidence.  (Pls.' Mem. of Law in Supp. of Cross-Mot. to Vacate 18–27.)  In response, Defendant filed a motion to dismiss Plaintiffs' claims as being completely resolved by the arbitration and a motion to confirm the arbitration award.

The Court granted Plaintiffs' motion to vacate the arbitration award and denied

---

[2]In the complaint's prayer for relief, Plaintiffs request "a judgment for $2,000,000.00 in lost franchise revenue due to the wrongful conduct of Defendant in violation of the New Jersey covenant of good faith and fair dealing."  (Compl.)

Defendant's motions to dismiss and to confirm the award.  The Court reasoned that Defendant's contract claim accrued in 2000 or shortly after, when Plaintiffs failed to complete the renovation, and that the three-year period of limitations in the franchise agreement thus barred Defendant from initiating arbitration in 2006.  Because the Court found this argument dispositive of the motions, the Court did not address Plaintiffs' remaining arguments.

Defendant now moves for reconsideration of the Court's order vacating the arbitration award and denying Defendant's motion to confirm the award and to dismiss Plaintiff's complaint.  Defendant argues that the Court overlooked that the parties agreed in the franchise contract to submit all questions of whether a dispute is arbitrable to the arbitrator, including the question of whether the contract's period of limitations bars arbitration.[3]

The Court agrees.  Furthermore, the Court holds that Plaintiffs' remaining arguments impugning the arbitration award's validity to be without merit.  Accordingly, the Court grants Defendants motion for reconsideration, motion to confirm the arbitration award, and motion to dismiss Plaintiffs' complaint, and denies Plaintiffs' motions to vacate the arbitration award.

---

[3]Defendant has not clearly raised this argument before.  Defendant claims this is because the Court considered Plaintiffs' statute-of-limitations argument sua sponte and thus that Defendant had opportunity to respond to it.  This is simply untrue; Plaintiffs clearly raised this statute of limitations argument both before the arbitrator and before this Court.

II.     **DISCUSSION**

Local Rule of Civil Procedure 7.1(i) allows a party to motion for a district court to reconsider an order or judgment.  One ground for granting such a motion, the relevant ground here, is where the court has overlooked "dispositive factual matters or controlling decisions of law."  See United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

A.     **The Three Year Limitations Period**

As explained above, Defendant argues that the Court overlooked that the parties contractually submitted to the arbitrator the question of whether the three-year period of limitations bars arbitration.  The Court agrees.

Arbitration is at essence a matter of contract.  United Steelworkers of Am., AFL-CIO-CLC v. Rohm & Haas Co., 522 F.3d 324, 331 (3d Cir. 2008).  Parties are bound to arbitrate—rather than litigate—their disputes only to the extent that they have contractually agreed to do so.  See Gay v. CreditInform, 511 F.3d 369, 386 (3d Cir. 2007).  The question of whether the parties have contractually submitted a dispute to arbitration—the question of arbitrability—is generally an issue for judicial determination by a district court, with one exception.  Id. at 387.  The exception is that like any other matter, parties may contractually agree to submit the question of arbitrability itself to arbitration.  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942–43 (1995).

Here, in determining that a contract dispute between the parties was not arbitrable

8

after three years the Court overlooked that the parties had agreed in the franchise agreement to submit the question of arbitrability itself to arbitration.  The franchise agreement's arbitration provision provides that disputes will be sent to arbitration "in accordance with the Commercial Arbitration Rules of the American Arbitration Association."  (Mueller Decl. ¶ 22.)  One of these Commercial Arbitration Rules, specifically Rule R-7, provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  The parties' agreement to arbitrate any contract disputes under these Commercial Arbitration Rules thus includes an agreement to submit the question of arbitrability to the arbitrator.[4]  Accordingly, it was improper for the Court to substitute its judgment for the arbitrator's judgment with respect to whether the parties had agreed to arbitrate disputes more than three years old.

Because the question of arbitrability was for the arbitrator, and not this Court, to decide, Plaintiffs must present some other valid ground on which to attack the arbitration. Plaintiffs indeed do present six other arguments to support their motion to vacate the arbitration.  The Court, however, finds these unpersuasive, as the Opinion will now explain.

---

[4]Indeed, other courts have uniformly held that agreements submitting to arbitration under American Arbitration Rules implicitly include agreements to submit the question of arbitrability to the arbitrator.  E.g., Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005).

**B.      Whether Defendant's Improper Service of the Demand for Arbitration Justifies Vacating the Award**

Plaintiffs claim that Defendant did not properly serve them with the demand for arbitration and that this justifies vacating the award.  Plaintiffs note that while Defendant properly served Plaintiff Harshad Patel with a demand for arbitration, Defendant served a corporation located in Georgia also called Bapu Corporation, instead of the Bapu Corporation that is a Plaintiff in this case, which is located in New Jersey.  Plaintiffs claim that this is fraud, which justifies vacating the award.

The Court disagrees.  Plaintiffs are correct that courts may vacate an arbitration award if it was procured by some kind of fraud.  9 U.S.C. § 10(a)(1).  Here, however, there is no evidence of fraud.  Rather Defendant appears to have made an honest mistake in serving a company in Georgia with the same name as Plaintiff Bapu Corporation.  Nor was there any prejudice from this mistake; Plaintiff Patel is Plaintiff Bapu's President, so Plaintiff Bapu had immediate notice of the demand to arbitrate through Plaintiff Patel.  The Court finds no evidence of fraud and thus no justification for vacating the award under § 10(a)(1).

**C.      Whether the Arbitrator Was Biased**

Plaintiffs claim that the arbitrator was biased and that this justifies vacating the award.  Plaintiffs note that the arbitrator failed to realize and disclose to the parties that the law firm at which he is a partner represents a hotel company of which Defendant's CEO is a board member.

10

The Court disagrees that this constitutes grounds to vacate an arbitration award. Courts may vacate an arbitration award if the arbitrator was evidently partial.  9 U.S.C. § 10(a)(2).  Such evident partiality exists where "a reasonable person would have to conclude that the arbitrator was partial to [one] party to the arbitration.'" HSM Constr. Servs., Inc. v. MDC Sys., Inc., 239 F. App'x 748, 753 (3d Cir. 2007).  This standard requires proof of circumstances "powerfully suggestive of bias." Id.  Here, the arbitrator's connection to Defendant's CEO is not "powerfully suggestive of bias."  There is no evidence in the record that the arbitrator even knew of this tangential connection; indeed, the arbitrator appears to have honestly conducted a conflict check without discovering this connection.  Indeed, this tangential connection is too attenuated to give off even an appearance of bias.  Accordingly, the arbitrator's connection to Defendant's CEO does not constitute grounds to vacate the arbitration award.

**D.    Whether the Arbitrator's Refusal to Postpone the Arbitration Hearing Justifies Vacating the Award**

Plaintiffs claim that the arbitrator improperly refused to postpone the December 13, 2007, arbitration hearing upon Plaintiffs request and that this justifies vacating the award.  Plaintiffs do not describe this request, but it appears that Plaintiffs are referring to an email that Plaintiffs sent to the arbitrator on December 12, 2007, the night before the arbitration requesting a one day continuation.  The arbitrator denied this request.

This refusal does not constitute grounds to vacate an arbitration award.  Courts may vacate an arbitration award if the arbitrator unreasonably refuses to postpone an

arbitration hearing.  9 U.S.C. § 10(a)(3).  In determining whether to vacate an award for such a refusal, courts will examine whether there was any reasonable basis for it and whether the party seeking postponement advanced "sufficient cause."  See Scott v. Prudential Sec., Inc., 141 F.3d 1007, 1016 (11th Cir. 1998).  Here, the arbitrator certainly had a reasonable basis to refuse to postpone the hearing: Plaintiffs did not request postponement until the night before the hearing.  Furthermore, Plaintiffs fail to put forth any sufficient cause to explain why postponement was necessary or even desirable.[5] Accordingly, the arbitrator's refusal to postpone the hearing is not grounds to vacate the arbitration award.

### E.   Whether the Arbitrator's Interpretation of the Contract Justifies Vacating the Award

Plaintiffs argue that the arbitrator misinterpreted the franchise agreement and that this justifies vacating the award.  Specifically, Plaintiffs point to the arbitrator's comment that liquidated damages would be appropriate in this contractual setting because "[t]he cost to lock up a particular [hotel] market would be impossible to calculate."  Plaintiffs argue that the contract does not actually contain a "lock up" provision, by which Plaintiffs appear to refer to a contractual provision that would prevent Defendant from granting franchises within a certain distance from Plaintiffs' franchise.  Plaintiffs claim that this misinterpretation constitutes grounds to vacate the arbitration award.

---

[5]Plaintiffs argue that "[t]he Arbitrator was requested to adjourn the December 13, 2007 hearing to December 14, 2007 to rule on evidentiary objections."  Plaintiffs fail to explain why the arbitrator could not have ruled on those objections at the December 13, 2007 hearing.

The Court disagrees.  As discussed above, interpretation of the

contract—including the scope of its arbitration clause—is a task for the arbitrator, not the

Court.  The Court will not revisit the arbitrator's interpretation.  Furthermore, it is not

clear whether the arbitrator was implying that the franchise agreement contained a "lock

up" provision, as Plaintiffs call it, or was merely noting as a practical matter that the

opening of a franchise precludes opening of a nearby franchise.  This does not constitute

grounds to vacate the arbitration award.

### F.    Whether the Arbitrator's Calculation of Liquidated Damages Justifies Vacating the Arbitration Award

Plaintiffs claim that the arbitrator miscalculated liquidated damages, under a

liquidated damages provision in the contract, and that this justifies vacating the arbitration

award.  Plaintiffs make three arguments to support this claim.  The Court finds each

unpersuasive.

First, Plaintiffs argue that "[t]he provision caps liquidated damages at $100,000"

while the arbitrator awarded more than this amount.  Plaintiffs refer to a provision in the

contract that states as follows: "If the Hotel is sold during the first five (5) years of the

Agreement to a bona fide purchaser and the purchaser does not enter into a Franchise

Agreement with us for the Hotel or does not assume the Agreement, liquidated damages

will not exceed $100,000 so long as liquidated damages are paid in certified funds within

10 days from the sale of the Hotel."  This provision is clearly inapplicable for several

reasons.  For example, there is no evidence that Plaintiffs have paid any liquidated

damages in certified funds and certainly not within ten days from the sale of the Hotel.
Thus there is no $100,000 cap on liquidated damages.

Second, Plaintiffs argue that the arbitrator miscalculated the amount of liquidated
damages.  Understanding Plaintiffs' argument requires mention of three previously
undiscussed provisions in the franchise agreement dealing with liquidated damages in the
event that Defendant terminates the contract.  Most importantly, the contract provides that
"[w]here the termination occurs before the Opening Date . . . you will pay us within 30
days after the termination, as liquidated damages and not as a penalty for the premature
termination, the product of (x) the Rentable Rooms, multiplied by (y) $40.00, multiplied
by (z) the Remaining Months (but not to exceed 36 months)."  The contract further
defines "Remaining Months" as "the number of months until the next date that you could
have terminated this Agreement."  Finally, the contract provides that either party had the
right to terminate the contract "on the 5th, 10th or 15th anniversary of the Opening Date."
When calculating damages, the arbitrator determined that because Plaintiffs never opened
the hotel, their right to terminate the contract was at least five years away and thus
calculated the "Remaining Months" of the contract by following the thirty-six month cap
contained in the liquidated damages provision.  Plaintiffs' argument, however, is that "as
there was no Opening Date, the date [for calculating the remaining months] would have
to be the date that *would have been* Opening Date."  Plaintiffs conclude that "[a]s
Defendant claimed it terminated the Agreement January 16, 2005, 'Remaining Months'

14

would have been no more than January 2005 to December 1, 2000—ten months."

This argument is wholly without merit or sense.  There is no basis for redefining the term "Opening Date" as the date on which the hotel should have opened, as opposed to defining it as the day on which it actually opened.  Indeed, the contract clearly defines "Opening Date" as "the date that you begin to rent sleeping rooms to the public at the Hotel under this Agreement."  If no opening date occurs, then Plaintiffs never actually possessed a right to terminate the contract, and the contract's thirty-six month cap on liquidated damages applies.  This is precisely what the arbitrator correctly did.

Third, Plaintiffs argue that the arbitrator manifestly disregarded the applicable state law, Maryland law, in determining that the liquidated damages clause was valid.  This argument too is wholly without merit.  Courts interpreting Maryland law have specifically approved of Defendant's liquidated damages provision in other cases.  There is thus no basis for this Court to hold that the arbitrator manifestly disregarded Maryland law in upholding the liquidated damages provision.

### G.    Whether the Arbitrator Improperly Relied on Hearsay Evidence

Finally, Plaintiffs argue that the arbitrator improperly relied on hearsay evidence.  But "[i]t is well-established, however, that arbitrators are not required to adhere to the Federal Rules of Evidence, including the rule against hearsay."  Railoa v. Union Bank of Switz., LLC, 230 F. Supp. 2d 355, 360 (S.D.N.Y. 2002).  Thus the arbitrator's reliance on hearsay does not justify vacating the arbitration award.

15

### III.    CONCLUSION

In conclusion, the Court finds on reconsideration that the arbitration award is valid and that Plaintiffs' challenges to it are without merit.  Accordingly, Defendant's motion for reconsideration, motion to dismiss Plaintiffs' complaint as barred by the arbitration award, and motion to confirm the award are **GRANTED**, and Plaintiffs' motion to vacate the arbitration award is **DENIED**.  An Order accompanies this Opinion.


s/William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

Dated: September 8, 2008

16