UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------------------X
:
BAPU CORP. & HARSHAD S. PATEL,              :     Docket No. 07-CV-5928 (WJM)
:
                Plaintiffs,                  :
:
       v.                                          :
:
CHOICE HOTELS INTERNATIONAL, INC.,          :
:
                Defendant.                   :
:
------------------------------------------------------------------X

MEMORANDUM OF LAW IN SUPPORT
FOR MOTION FOR RECONSIDERATION
OF THE COURT'S JUNE 1, 2010
LETTER OPINION AND ORDER

*Submitted by:*

Michael R. Curran (mrcurran2)
Attorney for Plaintiffs
E-4 Greenbriar Court
Clifton, New Jersey 07012
(973) 249-1449 (tel.)

## **Table of Contents**

|  | Page No. |
|---|---|
| Introduction | 1 |
| Standard on Motion for Reconsideration | 2 |
| Legal Argument | 3 |
|     Point I — The Court Did Not Apply the Lodestar Methodology and Governing Maryland Law to Determine Reasonable Fees | 3 |
|     Point II — The Claim for Attorney's Fees Was Never Pleaded When the Cause Was Initiated in 2006 and Is Now Barred by the Three-Year Statute of Limitations as the Claims Are No Longer Amendable | 5 |
| Conclusion | 6 |
| Addendum | 7 |

## Introduction

Plaintiffs Bapu Corp. and Harshad S. Patel ("plaintiffs") respectfully move for reconsideration of the Court's June 1, 2010 Letter Opinion and Order granting defendant Choice Hotels International, Inc. ("defendant") attorneys' fees in the amount of $67,983.00 plus post-judgment interest and costs. Plaintiffs make this motion in order to bring to the Court's attention errors of law and overlooked material facts pursuant to Fed. R. Civ. P. 59(e) and L.Civ.R. 7.1(i).

This motion is brought in order to address the Court's having overlooked application of the lodestar methodology or analysis to the legal fees and costs that were presented in this case and having awarded fees without looking into the actual reasonableness of the fees, which analysis is governed by decisional law of the State of Maryland as required by Paragraph 20(f) of the relevant franchise agreement. (The arbitration clause also applies the law of Maryland.) Both sides argued the applicability of the law of Maryland in the fee motion and opposition, of which the Court entirely omits consideration in its June 1, 2010 Letter Opinion.

In addition, there is an interesting legal fact in the case that has been overlooked. As argued by opposing counsel in his July 9, 2008 Motion for Reconsideration, the Court's review of the decision of the arbitrator was circumscribed on various grounds. See, e.g., the argument at **(ECF Docket No. 36-1, pp. 1-2)**. It was argued that the decision and award of the arbitrator deciding *claims* asserted by defendant in October 2006 were deserving of deference by the Court—and the result was that the argument by plaintiffs that the three-year statute of limitations found in the agreement and under Maryland law barring the arbitration as beyond the arbitrator's jurisdiction was something that only the arbitrator was entitled to decide. However, in the case of the fee motion, there was no such claim before the arbitrator. He never decided the issue of fees, but only the costs of the arbitration. The claim for fees came before this Court as a separate

1

matter in November 2008, which was eight years after the default of November 30, 2000 and over four years after the time the Court found the contract was terminated in 2004. June 1, 2010 Letter Opinion at 1 **(ECF Docket No. 69)**. In addition, the original demand—defendant's pleading—only claimed the "expenses of its attorneys" and not *attorneys' fees* because defendant used its in-house staff counsel to prosecute liquidated damages cases and did not contract outside counsel. See **(ECF Docket No. 10-4 at 15) (01/18/08)** (arbitration demand). Defendant, in addition, never amended its demand within the time periods above—neither within the eight years after the default of November 30, 2000 nor within the four years plus the Court found had elapsed from the time the contract was terminated in 2004. Thus, as a result, the Court is respectfully barred by the same three-year statute of limitations that the arbitrator failed to apply on the motion for fees and, in the absence of tolling, there is no jurisdiction over the claim.

## Standard on Motion for Reconsideration

Local Civil Rule 7.1(i) permits a party to seek reconsideration where there are "matters or controlling decisions which the party believes the Judge . . . has overlooked." Fed. R. Civ. P. 59(e) permits a party to petition the Court to avert an injustice in a judgment or order. The Court may grant a motion for reconsideration if the movant establishes "the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Sea Food Café, Inc. ex. rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). While the standard is a difficult one to meet, reconsideration is proper where it can be shown that dispositive factual matters or controlling issues of law were overlooked. See Bryan v. Shah, 351 F.Supp.2d 195 (D.N.J. 2005) (granting reconsideration where the court overlooked cases holding a remedy other than the one ordered by the court would be appropriate); Innovation Data Proc. v. Intern. Bus. Machine, 603 F.Supp. 646, 647 (D.N.J. 1984) (granting motion for reconsideration where a legal issue was overlooked).

Point I     The Court Did Not Apply the Lodestar Methodology and Governing Maryland Law to Determine Reasonable Fees

It is undisputed the law governing the parties' contractual relationship in the franchise agreement in this case is the law of Maryland, as set forth in the parties' agreement at Paragraph 20(f) and also in the arbitration clause at Paragraph 22. See relevant page from franchise agreement annexed in Addendum herein. Both parties argued that Maryland law applied in the fee motion and in the opposition to the motion for attorneys' fees. Despite this unanimity on the applicable governing law, the Court's June 1, 2010 Letter Opinion completely omits mention of Maryland law. Plaintiffs even cite a decision by the arbitrator in this case, where as an appellate judge the former arbitrator opined a strict standard for awards of attorney's fees in Maryland as being a narrow exception to the governing common law American Rule followed in Maryland. Thomas v. Capital Medical Management Associates, LLC, 189 Md.App. 439, 468, 985 A.2d 51 (Md. Ct. Spec. App. Dec. 7, 2009) citing Nova Research, Inc. v. Penske Truck Leasing, L.P., 406 Md. 435, 455, 952 A.2d 275 (2008) (premiere case on attorney's fee awards); see also Thomas v. Gladstone, 386 Md. 693, 699, 874 A.2d 434, 437 (2005) (American Rule exceptions). The cases cited emphasize that a court must do a detailed inquiry into the reasonableness of a fee before granting a fee application. The Court did not do this here, but accepted the fees requested in verbatim form on the basis of generalized survey data.

The Court cites Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), a case about recovery by a plaintiff under 42 U.S.C. § 1988, for the proposition that a party seeking fees bears the burden of establishing the reasonableness of the fees. The Supreme Court stated in Hensley: "The most useful starting point for determining the amount of a reasonable fee is the number or hours reasonably expended on the litigation multiplied by a *reasonable hourly rate*." Id. (emphasis supplied). However, the Supreme Court also stated:

3

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." [Citation omitted.] Cases may be overstaffed, and the skill and experience of lawyers may vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours in his fee submission. * * * *

461 U.S. at 434. There is no evidence why so many lawyers were involved with this very simple case, nor why senior partners were called in. The case was not a battle between corporate giants nor was it a complex securities matter, for example. Thus, the billing should have resulted in some deductions by counsel for defendant. In addition, defendant simply did not prevail from December 2007 to June 2008. The simple arguments raised *post facto* in the July 9, 2008 motion for reconsideration should have been raised initially and were not. (Defendant instead filed a Rule 12(b)(6) motion.) This inefficiency should not be shouldered by plaintiffs and hours up to and including June 24, 2008 should be eliminated or reduced as not being "reasonable," as they were an apparent waste of time. The billing on this basis alone should be halved.

The Court cited <u>Apple Corps. Limited v. International Collectors Society</u>, 25 F.Supp.2d 480 (D.N.J. 1998) for the proposition that the burden shifts to the side opposing fees once "reasonableness" of fees is established. While not conceding that the fees are reasonable, the Court, respectfully, citing the <u>Apple Corps</u>. case, has not applied the analysis therein. The court in <u>Apple Corps</u>. made substantial reductions in requested fees. <u>See</u> Addendum (sample pages from the case where, for example, an application for 248 hours of fees was reduced to 132.25 hours). In <u>Apple Corps</u>. the court stated "[t]he lodestar is presumed to yield a reasonable fee. <u>Washington v. Philadelphia Court of Common Pleas</u>, 89 F.3d 1031, 1035 (3d Cir. 1996) (citing <u>City of Burlington v. Dague</u>, 505 U.S. 557, 112 S.Ct. 2638 * * * (1992)). However, the lodestar calculation requires that the court 'carefully and critically evaluate the hours and hourly rate set forth by counsel.'" <u>Apple Corps</u>., 25 F.Supp.2d at 484-85 (Citation omitted). Very recently, the

4

U.S. Supreme Court said: "[W]e have noted that 'the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee,' * * * and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." Perdue v. Kenny A., --- U.S. ----, 130 S.Ct. 1662, 1673 (April 21, 2010). The Supreme Court found that the lodestar was the paradigm of a "reasonable fee," which is consonant with Maryland law. The Court respectfully overlooked this standard, which was error.

> **Point II**    **The Claim for Attorney's Fees Was Never Pleaded When the Cause Was Initiated in 2006 and Is Now Barred by the Three-Year Statute of Limitations as the Claims Are No Longer Amendable**

The Court is respectfully familiar with arguments raised that the arbitrator had no jurisdiction over the arbitration because of the three-year limitations period bar. The same bar, of course, would be argued to apply to any consideration by the District Court to claims under the franchise agreement both as to the built-in three-year limit under Paragraph 20(k), but also under the three-year limitation under Maryland law.

The attorney's fees request is just such a claim barred by the limitations period. The claim could have been said to first accrue at the time of the November 30, 2000 breach, when collection was a possibility. The second time was in 2004 when the agreement was specifically terminated as found by the Court. However, it wasn't until either eight or four years after the claim for collection costs accrued that the fee motion was brought in November 2008. In addition, the original arbitration demand—the pleadings—only sought "the expenses of its attorneys," which at the time of the demand were in-house counsel. Thus, only *expenses* not fees were pleaded. Plaintiffs argue that the three-year limitations period bars any fees, as no claim for fees, nor amended claim in this matter was ever asserted before the case concluded. It would have been a simple matter to plead fees at any time, but this did not occur. While the arbitrator

could ignore the limitations period, as it has turned out, it is respectfully argued that this Court cannot and it has no jurisdiction to award any attorney's fees on a fee motion brought November 2008. Alternatively, plaintiffs argue the contract was executory in this matter. Again, while the arbitrator did not consider this argument, the Court must in order to award fees. The condition precedent to the plaintiffs entering the franchise system were the renovations not completed by November 30, 2000, many years before expiration the applicable statute of limitations period.

### Conclusion

Wherefore, plaintiffs respectfully request that the Court reconsider the Letter Opinion and Order of June 1, 2010, vacating same, and either denying the fee motion as barred by the contractual limitations period and failure to plead prior to its expiration or, alternatively, modify the original fee award to a reasonable lodestar fee under Maryland law.

Dated:      June 15, 2010

_____
Michael R. Curran
Attorney for Plaintiffs

# ADDENDUM

b. Except as otherwise expressly provided in this Agreement, nothing in this Agreement is intended, nor will anything in this Agreement be deemed, to confer on any person or legal entity other than us or you, or our respective successors and assigns, any rights or remedies under or by reason of this Agreement.

c. All captions in this Agreement are intended solely for the convenience of the parties and do not affect the meaning or construction of any section.

d. All references to the masculine, neuter, or singular, include the masculine, feminine, neuter, or plural. If "you" consists of more than one person or entity, your acknowledgments, promises, covenants, agreements, and obligations made or undertaken in this Agreement are jointly and severally undertaken by each of you.

e. If this Agreement is executed in multiple counterparts, each executed copy is an original.

f. This Agreement becomes valid only when we have signed it, and it will be interpreted under the substantive laws of Maryland, not including its conflict of laws provision; except that nothing herein shall be construed to establish independently your right to pursue claims under Maryland's Franchisee Registration and Disclosure Law.

g. Rights and remedies stated in this Agreement are cumulative and not exclusive of any other right or remedy.

h. Except to the extent stated in Section 11.a., each party may obtain injunctive relief against threatened conduct that will cause it loss or damages, under the usual equity rules, including the applicable rules for obtaining restraining orders and preliminary injunctions.

i. **THIS AGREEMENT CONTAINS THE COMPLETE UNDERSTANDING OF THE PARTIES AND REPLACES ANY PREVIOUS WRITTEN OR ORAL AGREEMENT ON THE SAME SUBJECT MATTER. NO REPRESENTATION, INDUCEMENT, PROMISE OR AGREEMENT, ORAL OR OTHERWISE, NOT CONTAINED IN THIS AGREEMENT, WILL BE OF ANY FORCE OR EFFECT.**

j. Amendments to this Agreement will not be effective unless signed by one of our duly-elected officers and by you.

k. Neither party may file a claim (except claims for indemnification, which will be governed by applicable laws) arising out of or relating to this Agreement after 3 years from the date that the claim arose, unless applicable law states a shorter statute of limitations.

**21. Acknowledgments.**

a. You have conducted an independent investigation of the benefits of signing this Agreement, and you understand that the business venture contemplated by this Agreement involves business risks, and that its success will be largely dependent on your ability as an independent business person. We have not made, and you acknowledge that you have not received from us or our agents, any projection, warranty or guarantee, express or implied, as to the profitability or other potential success of the business venture contemplated by this Agreement, except as contained in the disclosure statement(s) we gave you. By signing this Agreement, you represent to us that you have neither received nor relied on representations of any kind concerning this Agreement, except as stated in the disclosure statement(s) we gave you or as stated in this Agreement.

b. You agree that this Agreement relates only to the Hotel and the Location. Subject to the terms of our Impact Policy in force from time to time: (1) we may own, operate, franchise or license other hotels using the Marks and the System, as well as hotels using any other brand, at any other location, and (2) we, our affiliates and other franchisees may now or in the future engage in transient lodging or related business activities that may compete with the System or with the Hotel.

25 F.Supp.2d 480
**(Cite as: 25 F.Supp.2d 480)**

| Date | Hours | Description | |
|---|---|---|---|
| 04/30/98 | .70 | Teleconference with court; conference with AL. | .35 |
| 05/01/98 | .40 | Teleconference with Judge Greenaway's chambers; teleconference with Aspinall. | .20 |
| 05/29/98 | 1.00 | Teleconference with Judge Greenaway and Badke; review order; teleconference with AJL. | .50 |
| 06/01/98 | 2.80 | Conference with AJL; reviewing case re: Rule 60; appeal; develop settlement proposal; teleconferences with Shukat and Weber. | 1.40 |
| 06/03/98 | 4.60 | Prepare for and appear at conferences with Judge Greenaway. | 2.30 |
| 06/26/98 | 1.70 | Teleconferences with Judge Greenaway's chambers, Dorothy Weber, Peter Shukat; review opinion. | .85 |

FN21. Defendants submitted their cross-motion to dissolve the Consent Order on October 20, 1997, along with their brief in opposition to Plaintiffs' motion for contempt. Therefore, the Court shall disallow the hours Plaintiffs' counsel spent reviewing Defendants' opposition papers which pertained to Defendants' cross-motion to dissolve the Consent Order.

FN22. Plaintiffs' Reply Memorandum of Law in Support of Their Motion for Contempt includes a section in opposition to Defendants' cross-motion to dissolve the Consent Order.

FN23. Part of defendant Tilson's cross-examination focused on Defendants' cross-motion to dissolve the Consent Order.

*504 Hours deducted as not expended in connection with contempt motion: *62.75*

Hours deducted as unnecessary: *2*

Hours deducted as excessive: *51*

Total hours deducted = *115.75*

Requested hours: *248* MINUS hours deducted *115.75* = *132.25*

Hours reasonably expended: *132.25* multiplied by hourly rate: *$280*

Attorneys' fees awarded to Paul V. LiCalsi: **$37,030.00**

*Jane G. Stevens*

Total hours deducted = *0*

*505 Requested hours: *.30* hours multiplied by hourly rate: *$280*

Attorneys' fees awarded to Jane G. Stevens: **$84.00**

*Martin R. Gold*

Total hours deducted = *.80*

Requested hours: *.80* hours MINUS hours deducted: *.80* = *0*

Attorneys' fees awarded to Martin R. Gold: **$ 0**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

25 F.Supp.2d 480
(Cite as: 25 F.Supp.2d 480)

| | | |
|---|---|---|
| 11/05/97 | 1.20 | Drafting argument and research. |

The entry does not specify, however, whether counsel's work was related to the contempt motion, in which case the hours are compensable, or whether the hours were expended in connection with defending against Defendants' motions, in which case the hours are not compensable.

| | | |
|---|---|---|
| 10/31/97 | 7.20 | Meetings with D. Weber, L. Ruggeri, J. Mitnick, J. Glick; research re: Rule 60(b) motion; teleconference with N. Aspinall. |

The research on the cross-motion to dissolve the Consent Order (the Rule 60(b) motion) is not compensable. The meetings with D. Weber, L. Ruggeri, J. Mitnick and J. Glick (the investigators Plaintiffs' counsel hired to investigate whether Defendants were violating the Consent Order) are compensable because they are related to the motion for contempt. However, the record does not indicate how many hours of the 7.20 hours billed were devoted to research on the Rule 60(b) motion and how many hours were devoted to the meeting in connection with the contempt motion.

The Third Circuit has rejected "a requirement that records be kept by task-e.g., for each motion, issue or part of the case." *Washington,* 89 F.3d at 1038 (citing *Rode,* 892 F.2d at 1189-90). In the instant case, some entries are specific enough to allow the Court to determine whether the hours were devoted to the contempt motion or to defending against Defendants' motions. However, as to the entries that list multiple tasks or which lack the specificity necessary for the Court to determine whether the hours were expended in connection with the contempt motion, the Court will disallow those hours. *See* Appendix A.

Another entry reads as follows:

The Court will reduce or disallow the following hours as not expended in connection with the contempt motion:

| | | Hours Requested | Hours Deducted |
|---|---|---|---|
| Gold, Farrell: | Mr. LiCalsi | 248 | 62.75 |
| | Mr. Gold | .8 | .8 [6] |
| | Ms. Lippman | 438.4 | 106.2 |
| | Ms. Costello | 35.8 | 6.4 |
| | Mr. Weller | 18.9 | .50 |
| | Ms. Harris | 162.6 | 9 |
| | Ms. Termine | 8 | 2 |
| Shukat, Arrow: | Ms. Weber | 56.8 | 3.8 |
| | Mr. Herbsman | 2.25 | .75 |

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.